GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORA-
TION, LTD., Respondent, v. BERGQUIST and another,
Appellants.

*November 2—November 28, 1961.*

168

For the appellants there were briefs by *Sonnenberg & Boden* of Milwaukee, and oral argument by *H. F. Sonnenberg*.

For the respondent there was a brief by *Arnold, Philipp, Murray & O'Neill* of Milwaukee, and oral argument by *Suel O. Arnold*.

FAIRCHILD, J. The insureds demanded the protection afforded by the terms of the policy and threatened legal action to compel the insurer to pay any amount for which the insureds might be held liable to the contractors in the Sauk county action. The insurer asserted certain policy defenses

and claimed it was not obligated to defend the insureds in the Sauk county action nor to pay the amount of any judgment therein.

After the insureds executed the nonwaiver agreement, the insurer did conduct the defense of the Sauk county action. It could have continued to defend until final judgment. If the judgment went against the insureds, the insurer would still have been free to defend itself from liability on the policy. This course of action entailed the risk that the judgment might impose a very substantial liability upon the insureds and that the insurer would be required to pay if unsuccessful in establishing its policy defenses.

The insurer was presented with an opportunity for an advantageous settlement of the Sauk county action. Payment of $7,000 would dispose of a liability which might amount to $40,000 or $50,000. Apparently it was impossible to obtain immediate adjudication of the policy defenses in the action for declaratory judgment.

The insurer chose to make the $7,000 settlement, thus protecting the insureds from liability to the contractors as well as itself from possible liability in a greater amount. If the policy defenses were not valid, the insureds were entitled by the policy to the benefit conferred on them. The insurer contends that it should have the right to establish that the policy defenses were valid and that if they were, it would be inequitable for the insureds to retain the benefit without payment of the value thereof. The elements constituting unjust enrichment entitling a plaintiff to restitution are a benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of the fact of such benefit, and acceptance and retention by the defendant of such benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof.[1]

---

[1] *Nelson v. Preston* (1952), 262 Wis. 547, 550, 55 N. W. (2d) 918; *Kelley Lumber Co. v. Woelfel* (1957), 1 Wis. (2d) 390, 391, 83 N. W. (2d) 872.

Is it inequitable for an insured to refuse to reimburse an insurer for a payment made on behalf of the insured notwithstanding a dispute in good faith as to the existence of a policy defense if, in fact, it can ultimately be established that the policy defense was valid?

"(1) A person who has conferred a benefit upon another in response to the institution or threat of civil proceedings against him by the other

"(a) is entitled to restitution if the proceedings were threatened, instituted, or continued by the other without probable cause and with no belief in the existence of the cause of action or if accompanied by means constituting duress;

"(b) is not entitled to restitution merely because the other has begun or threatened to begin civil proceedings against him." [2]

The only threat alleged is that the insureds would attempt to establish the insurer's liability under the policy. There is no allegation that the insureds made their threat without probable cause and with no belief in the existence of the cause of action nor that it was accompanied by means constituting duress. The payment of $7,000 suggests that the insurer considered there was a possibility that its policy defenses might fail. (1) (b), quoted above, is applicable here.

We point out that insurer did not pay the debt of another in response to the threat of civil proceedings by a third person. Sec. 71 (2), p. 290, Restatement, Restitution, states that in such case the payor is entitled to restitution if the payor acted to avoid trouble and expense.[3] Although the insurer did pay the liability of the insureds, it did so only because of the possibility that it might be held obligated to do so under its contract with the insureds.

---

[2] Restatement, Restitution, p. 290, sec. 71.
[3] See *Kerkhoff v. American Automobile Ins. Co.* (1961), 14 Wis. (2d) 236, 241, footnote 2, 111 N. W. (2d) 91.

In the Reporters' Notes to sec. 71, it is said:

"The cases are unanimous in denying restitution to a person who, believing that another has no claim against him or being doubtful of its validity, nevertheless pays the other in order to avoid the difficulty of suit or to postpone suit, there being no element of duress present. There is duress if the claimant uses or threatens to use tortious means. The institution of civil proceedings unaccompanied by the seizure of the person or the attachment of property is not tortious unless instituted in bad faith." [4]

We are aware that the insurer was faced with an uncomfortable dilemma. Effecting the advantageous settlement might prejudice or waive its policy defenses. Advantageous settlement might no longer be possible by the time the policy defenses would be adjudicated.

But we do not find in this dilemma grounds for granting restitution for unjust enrichment. The insurer's business is to insure others against liability. Dilemmas such as arose here must frequently confront insurers, virtually as an ordinary incident of their business. Policy provisions could doubtless be devised to avoid or alleviate the problem if sufficiently important.

It seems to us good public policy to require that if insurers desire protection in this situation, they provide for it by contract. Were we to decide otherwise, every insurer could hold open a policy defense, however dubious, when making a settlement.

We do not discuss the references in the complaint to subrogation and estoppel. Plaintiff's brief indicates that the sole question is whether there is a cause of action for unjust enrichment.

We conclude therefore that if plaintiff insurer's cause of action for the amount paid in settlement has any merit, it must arise from contract.

---

[4] Restatement, Restitution, Notes, p. 80.

.With respect to a cause of action in contract, we analyze the complaint as follows:

The policy does not expressly obligate the insureds to reimburse the insurer for any settlement it may make if the insureds have failed to comply with the conditions of the policy. Did the nonwaiver agreement have this effect? We think not. By its terms it did no more than preserve any right the insurer had to defend itself against liability on its policy. Its terms are consistent with the thought that the insurer might continue to defend the Sauk county action and later defend itself from liability on the policy if the Sauk county action ended in judgment against the insureds. Under the circumstances the nonwaiver agreement does not clearly imply a promise by the insureds to reimburse the insurer for a payment which the insurer might make though not obligated to make it. A nonwaiver agreement, like a policy, is to be construed against the insurer.[5]

· The recital in the stipulation of settlement of the Sauk county action presents a different problem. It also did not expressly provide that the insureds would reimburse the insurer if the policy defense were established. Yet at that juncture it would be meaningless if it did not so imply. If the complaint had alleged that the insureds agreed to the reservation at the time the settlement was made, a cause of action in contract would have been sufficiently stated. The allegations, however, are that the recital was dictated in open court in the presence of attorneys representing the insureds in the Sauk county action. Those attorneys were presumably selected by and compensated for that representation by the insurer. Under these circumstances the fact that they assented to a statement defining the obligations between the insurer and the insureds would not establish an agreement between the insurer and the insureds.

[5] 7 Couch, Cyclopedia of Insurance Law (1930 ed.), p. 5537, sec. 1562.

But the complaint also alleged that the insurer paid the $7,000 at the request of the insureds and paid it pursuant to reservation of the right to contend that the policy did not afford coverage. If this means that the insureds knew that the insurer intended to settle subject to that reservation, and, with that knowledge, requested the settlement, there would be implied a promise by the insureds to reimburse the insurer if the insurer successfully established a policy defense. The more advantageous the settlement, the more willing the insureds might have been to agree that the settlement be made and the question of who would ultimately pay it decided later.

Under familiar rules of liberal construction of pleadings, we so construe the allegations referred to, and conclude that a cause of action was stated, not for restitution, but on an implied promise to reimburse.

*By the Court.*—Order modified so that defendants' time to plead will run from the filing of the remittitur in the circuit court, and, as so modified, affirmed.

HALLOWS, J. (*concurring*). I concur in the result but for the reason the complaint states a cause of action for unjust enrichment. The majority denies a cause of action on this ground, relying on sec. 71(1)(b) of Restatement, Restitution, p. 290. This section is not applicable to the facts and deals only with a situation where A confers a benefit upon B in response to threat of, or the institution of, civil proceedings against him by B. The plaintiff does not rely on this section. Here, the plaintiff is not trying to recover restitution from the person to whom it .paid the $7,000 but from a third person whose liability it claims it paid at his request. The majority opinion requires the complaint to rest solely in contract on an implied promise on the part of the insured to reimburse the plaintiff.

The plaintiff was confronted with the fact it could not have subrogation against its insureds to protect itself in making the payment and still retain its policy defense. *Miller v. Kujak* (1958), 4 Wis. (2d) 80, 90 N. W. (2d) 137. Three courses were open to the plaintiff to obtain an interpretation of the coverage of its policy. It might have denied liability entirely and let the defendant bring a suit against it for a breach of policy conditions. The plaintiff might have commenced a suit for declaratory relief against the defendant. The third method was to proceed, as was done here, under a nonwaiver agreement. This method gave third-party claimant the prompt action by the insurance company and yet preserved its right against the defendant on its policy consistent with the policy expressed in *Kurz v. Collins* (1959), 6 Wis. (2d) 538, 95 N. W. (2d) 365.

Historically, the action for unjust enrichment developed as a remedy upon a contract implied at law or quasi contract and while ordinarily it involved money paid by the plaintiff to the defendant, the action also lay to recover payment made by the plaintiff to another at the request of the defendant. 3 Select Essays in Anglo-American Legal History, Contracts, p. 298. The modern rule is stated in Restatement, Restitution, p. 12, sec. 1, as follows:

"A person who has been unjustly enriched at the expense of another is required to make restitution to the other."

Here, the defendant received a benefit. It is true, the plaintiff may also have received some ultimate benefit but that does not destroy the fact that the defendant received an immediate benefit.

The essential elements of a quasi contract entitling one to judgment for unjust enrichment are: (1) A benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) the ac-

ceptance or retention by the defendant of such benefit under circumstances such as it would be inequitable to retain the benefit without payment of the value thereof. *Nelson v. Preston* (1952), 262 Wis. 547, 55 N. W. (2d) 918; *Kelley Lumber Co. v. Woelfel* (1957), 1 Wis. (2d) 390, 83 N. W. (2d) 872; *Supreme Construction Co. v. Olympic Recreation* (1959), 7 Wis. (2d) 74, 95 N. W. (2d) 826, 96 N. W. (2d) 809; *Arjay Investment Co. v. Kohlmetz* (1960), 9 Wis. (2d) 535, 101 N. W. (2d) 700. In the *Arjay Investment Case,* we pointed out that the theory of unjust enrichment was not whether the defendant and the plaintiff entered into a contract but that the law implied a promise to repay a benefit which it would be inequitable to retain. Recovery is based upon the universally recognized moral principle that he who has received a benefit has the duty to make restitution when to retain such benefit would be unjust. To reach this result and still observe the common-law form of action, the quasi-contract cases stated the law created or imposed an obligation in the absence of any agreement or assent of the party bound when the acts of the parties or others had placed in possession of one party property, money, or other things of value, under such circumstances that in equity and in good morals such person ought not to keep it. I see no reason why this principle should not apply here.

All that the plaintiff was doing was to preserve its policy defense. If it has a policy defense, then the defendant has been unjustly enriched by the payment made on his behalf by the plaintiff. If the plaintiff is bound by its policy, there has been no unjust enrichment. The plaintiff, acting under a nonwaiver agreement and at the request of the defendant, should not be foreclosed from raising this defense in an action for unjust enrichment and be required to prove an implied contract in fact.